UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAVON HIGH,

                Plaintiff,                          **DECISION AND ORDER**

                v.                             17-CV-6831 EAW

DR. JUN,

                Defendant.
_____

## <u>INTRODUCTION</u>

*Pro se* plaintiff Javon High ("Plaintiff"), who was formerly an inmate in the custody and control of the New York Department of Corrections and Community Supervision ("DOCCS"), asserts a claim for deliberate indifference to serious medical needs against defendant Dr. Jun ("Defendant") pursuant to 42 U.S.C. § 1983. (Dkt. 14). Defendant has filed a motion seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 22)[1]. For the reasons set forth below, Defendant's motion is granted. However, the Court will dismiss Plaintiff's claim without prejudice and afford Plaintiff an opportunity to amend.

---

[1] Defendant initially also sought dismissal pursuant to Federal Rule of Civil Procedure 41(b) based on a failure to prosecute. (*See* Dkt. 22-1 at 1). However, Defendant subsequently withdrew that portion of his motion. (*See* Dkt. 30 at 1).

## BACKGROUND

### I.   Procedural Background

Plaintiff's initial complaint in this matter was filed in the United States District Court for the Northern District of New York.  (Dkt. 1).  On December 23, 2017, a Decision and Order was entered severing and transferring to this District Plaintiff's claims against Defendant, Dr. Paula Bozer, and Dr. Carl Koenigsman.  (Dkt. 8).

On October 11, 2019, the Court entered an Order dismissing Plaintiff's claims against the defendants in their official capacities with prejudice and granting Plaintiff leave to file an amended complaint (Dkt. 13), which Plaintiff did on December 11, 2019 (Dkt. 14).  On April 21, 2020, the Court entered a Decision and Order dismissing Plaintiff's claims against Drs. Bozer and Koenigsman with prejudice but allowing Plaintiff's claim for deliberate indifference to medical needs against Defendant in his individual capacity to proceed to service pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  (Dkt. 15).

Defendant filed the instant motion to dismiss on November 24, 2020.  (Dkt. 22). After requesting and receiving multiple extensions of time (Dkt. 26; Dkt. 28), Plaintiff filed his response on May 17, 2021.  (Dkt. 29).  Defendant filed his reply on May 24, 2021. (Dkt. 30).

### II.   Factual Background

The following facts are taken from the amended complaint.  As is required at this stage of the proceedings, the Court treats Plaintiff's factual allegations as true.

Plaintiff suffers from chronic severe pain as a result of spinal cord compression and paresthesia of the skin.  (Dkt. 14 at 12-13).   Prior to entering DOCCS' custody, Plaintiff

- 2 -

underwent surgery, but that surgery "did not correct his serious medical issues fully and did not help his pain at all." (*Id*. at 12).  Plaintiff was prescribed oxycodone and gabapentin for pain relief.  (*Id*.).  Plaintiff also engaged in physical therapy.  (*Id*.).

Plaintiff was taken into custody in September 2016.  (*Id*. at 13).  He was initially housed at the Ulster Correctional Facility ("Ulster") (*id*.); his complaints regarding his treatment at Ulster were retained in the action brought in the Northern District of New York (Dkt. 8).  To briefly summarize, Plaintiff claims to have been denied all medical treatment at Ulster and further claims that when he complained, he was told "that's the way it is" and that if he didn't like it he should not have come to prison.  (Dkt. 14 at 14).

Plaintiff was transferred to the Wyoming Correctional Facility ("Wyoming") on October 27, 2016.  (*Id*. at 15).  Plaintiff was assigned to Dr. Jun for medical treatment. (*Id*.).  Plaintiff explained to Dr. Jun that he suffers from severe pain and that he required pain medication and physical therapy.  (*Id*.).  Approximately a month after Plaintiff first saw Dr. Jun, Dr. Jun prescribed him 600 mg of gabapentin three times per day.  (*Id*. at 15-16).  However, Plaintiff's "pleading for the most important 'real' pain medication . . . fell on deaf ears," and his request for physical therapy also was not granted.  (*Id*. at 16).

On January 25, 2017, Plaintiff went to sick call because his legs were swollen and he was having difficulty walking.  (*Id*.).  That same day, Dr. Jun sent Plaintiff for x-rays, which showed "spondylosis and chronic degenerative disc degeneration at L5 and S1." (*Id*.).  Plaintiff met with Dr. Jun two weeks later and asked for physical therapy and to see a neurologist "all to no avail."  (*Id*.).

Plaintiff saw Dr. Jun on March 9, 2017, because his knee was swollen from walking to get medication three times per day and he was still suffering from severe back pain. (*Id.*).  Dr. Jun prescribed him a cane and also gave him a permit to use crutches from March 9, 2017, to March 16, 2017.  (*Id.* at 17).  Further, on an unspecified date, Dr. Jun ordered an EMG which showed that Plaintiff had mild peripheral neuropathy bilaterally.  (*Id.* at 18-19).

Plaintiff had trouble communicating with Dr. Jun, who is of Asian descent.  (*Id.*). When Plaintiff would talk to Dr. Jun about his pain, it was "like [Dr. Jun] didn't even know what [Plaintiff] was talking about."  (*Id.*).  Dr. Jun repeatedly told Plaintiff that DOCCS was limiting inmate access to opioids due to the opioid "problem" in this country.  (*Id.*). Dr. Jun further advised Plaintiff that he was trying to "help him get away from" opioid medications because they were "not good for" him.  (*Id.*).  On or about August 4, 2017, Dr. Jun discontinued Plaintiff's gabapentin prescription "out of the blue."  (*Id.* at 18).  Plaintiff further complains that while he was receiving gabapentin, it was improperly "crushed" in contravention of manufacturer and FDA rules.  (*Id.* at 18).

Plaintiff filed a grievance in January of 2017.  (Dkt. 14 at 29).  A copy of this grievance is attached to the amended complaint.  (*Id.* at 31).  In his grievance, Plaintiff complained that his medical condition was being "ignored by medical staff."  (*Id.* at 31). Plaintiff more particularly complained he had requested physical therapy and to see a neurologist but his request had been denied, that he was having "extreme pain and difficulty walking to and from medical" to obtain his gabapentin prescription, and that he should be permitted to self-administer his gabapentin which was "being crushed-up by the medical

- 4 -

staff . . . without any kind of rational explanation as to why." (*Id*. at 32). Plaintiff fully exhausted this grievance. (*Id*. at 6, 34-38).

## DISCUSSION

### I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.   **Impact of the Court's Screening Order**

Before proceeding to the merits of Defendant's motion, the Court notes that Plaintiff's primary argument in opposition is that "this most honorable court had decided that plaintiff had filed a claim for which [relief] could be granted, if plaintiff was able [to] prove the all[e]gations in his claim." (Dkt. 29 at 1). Plaintiff has misunderstood the significance of the Court's Decision and Order allowing his claim to proceed to service. "A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6)." *Jones v. Sullivan*, No. 9:19-CV-0025 BKS CFH, 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020); *see also Jordan v. Greater Buffalo United Accountable Healthcare Network*, No. 1:20-CV-00067 LJV MJR, 2021 WL 2419564, at *2 (W.D.N.Y. Apr. 20, 2021) ("[A] court's decision allowing some claims to go forward at the initial screening does not insulate those claims from later review on a motion to dismiss."), *adopted*, 2021 WL 2416838 (W.D.N.Y. June 14, 2021). Accordingly, the Court has considered Defendant's arguments in favor of dismissal on their merits.

## III.   **Scope of Plaintiff's Grievance**

Defendant argues as a preliminary matter that Plaintiff failed to exhaust portions of his remaining claim. Defendant notes that Plaintiff's grievance makes no mention of a failure to provide oxycodone and that it pre-dates Plaintiff's claim that Defendant discontinued his gabapentin in August 2017. (Dkt. 22-1 at 4-6).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (the "PLRA"), requires an inmate to exhaust available administrative remedies prior to bringing a federal civil rights action such as this one. "The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim." *Green v. Haimes*, No. 9:18-CV-703 BKS ATB, 2019 WL 2775589, at *3 (N.D.N.Y. May 23, 2019), *adopted*, 2019 WL 2766544 (N.D.N.Y. July 2, 2019). Because failure to exhaust is an affirmative defense, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). However, a court may grant a Rule 12(b)(6) motion where "non-exhaustion is clear from the face of the complaint and incorporated documents." *Adams v. George*, No. 18-CV-2630 (NSR), 2020 WL 5504472, at *6 (S.D.N.Y. Sept. 8, 2020).

"An offshoot of the grievance . . . requirement, consistent with the overall principle of remedy exhaustion, is that the PLRA exhaustion requirement prevents a court from considering any claims that a plaintiff did not exhaust through grievance procedures available to him prior to filing suit." *Cooper v. Sheahan*, No. 12-CV-1227 (WMS), 2020 WL 1703210, at *10 (W.D.N.Y. Apr. 8, 2020) (quotation and alteration omitted). The scope of an inmate's lawsuit is thus "limited by the scope of the fully exhausted grievance." *Smith v. Goord*, No. 07-CV-6265-CJS, 2009 WL 3213289, at *6 (W.D.N.Y. Aug. 27, 2009). "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object

- 7 -

intelligibly to some asserted shortcoming." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quotation and citation omitted).

Here, the Court finds that Plaintiff's claim that he was improperly denied an oxycodone prescription falls within the scope of his exhausted grievance. Plaintiff complained generally that his medical condition was being ignored and that his pain was inadequately controlled. Plaintiff was not obligated to provide every detail of the treatment he was seeking; his allegations were sufficient to place prison officials "on notice of what, substantively, [was] claimed in order to permit a proper investigation." *Hawthorne v. Nurse Sturgeon*, No. 9:17-CV-438 LEK CFH, 2018 WL 4290458, at *6 (N.D.N.Y. Aug. 8, 2018) (citation omitted), *adopted*, 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018).

However, the Court does agree with Defendant that Plaintiff's claim that he was denied appropriate medical treatment when his gabapentin was discontinued in August 2017 is not within the scope of his January 2017 grievance. As another judge in this District has explained:

> Where an inmate's pleading asserts claims based upon events that occurred after the inmate filed his administrative grievance, the Court must consider whether the earlier grievance satisfies the exhaustion requirement of § 1997e(a), or whether the inmate should have filed another grievance. Briefly, the inmate is required to separately grieve the later-occurring incidents, unless they involve the "same problem" as to which the inmate previously exhausted his administrative remedies.

*Telesford v. Wenderlich*, No. 16-CV-6130 CJS, 2018 WL 4853667, at *7 (W.D.N.Y. Oct. 5, 2018) (quoting *Johnson v. Killian*, 680 F.3d 234, 238-239 (2d Cir. 2012)). Importantly, "[t]he fact that plaintiff has previously raised excessive force or medical care claims does not excuse him from exhausting all future claims based on medical care or excessive force."

*White v. Velie*, No. 9:15-CV-88 (TJM/ATB), 2015 WL 10567827, at *7 (N.D.N.Y. Dec. 18, 2015) (rejecting argument that exhaustion was not required because the plaintiff had "exhausted 'identical' medical care issues in the past," explaining that the action involved "specific instances of the alleged denial of medical care which plaintiff did not exhaust") *adopted*, 2016 WL 1238242 (N.D.N.Y. Mar. 28, 2016), *aff'd*, 709 F. App'x 35 (2d Cir. 2017).   The discontinuation of Plaintiff's gabapentin is a discrete event that he alleges constituted an improper denial of medical care, and he was accordingly required to file a separate grievance.   Because it is clear from the face of the complaint and the exhibits thereto that Plaintiff's allegations related to the discontinuation of his gabapentin in August 2017 were not within the scope of his grievance, Plaintiff cannot base his claim that he was denied appropriate medical treatment on such allegations.   Accordingly, the Court has limited its assessment of the sufficiency of Plaintiff's inadequate medical care claim solely to the allegations that fall within the scope of the properly exhausted grievance.

## III.   <u>Plaintiff Fails to State a Claim Against Defendant</u>

Plaintiff was allowed to proceed to service on a claim against Defendant for inadequate medical care.   A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that a defendant was deliberately indifferent to a plaintiff's serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).   The first component of such a claim is objective and requires that a plaintiff's medical condition be objectively serious.   "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"   *Harrison v. Barkley*, 219 F.3d 132, 136-37

(2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Lawrence v. Evans*, 136 F. Supp. 3d 486, 489 (W.D.N.Y. 2015) ("An objectively 'serious medical need' is one which presents 'a condition of urgency' that may result in 'death, degeneration, or extreme pain.'") (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994)), *aff'd*, 669 F. App'x 27 (2d Cir. 2016).

The second component of such a claim is subjective and requires a plaintiff to allege that the defendants were deliberately indifferent to his or her serious medical need.  *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *Hathaway*, 37 F.3d at 66.  To satisfy this prong, it is necessary that the defendants knew of but disregarded the medical need. *Lawrence*, 136 F. Supp. 3d at 489.  "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness," *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011), and "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," *Estelle*, 429 U.S. at 106.  Further, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment" and "mere disagreement over the proper treatment does not create a constitutional claim." *Hill*, 657 F.3d at 123 (citation omitted).  "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." *Id*.

Here, the Court will assume that Plaintiff has adequately alleged the existence of an objectively serious medical condition.  However, Plaintiff has not satisfied the subjective component, because his allegations do not support the conclusion that Defendant acted

with a sufficiently culpable state of mind.  To the contrary, it is clear from Plaintiff's allegations that Defendant attempted to treat Plaintiff, including by prescribing him gabapentin for his pain, providing him with a cane and crutches to alleviate his difficulties walking, and ordering both x-rays and an EMG in order to appropriately diagnose Plaintiff. Defendant's medical judgments that the dangers presented by opioid medications outweighed their potential benefit to Plaintiff and that physical therapy and an outside referral to a neurologist were not warranted are not an appropriate basis for a deliberate indifference claim.  Nor is Defendant's alleged inability to comprehend Plaintiff's complaints based on a language barrier.  Nothing in the amended complaint or the exhibits thereto would permit a factfinder to conclude that Defendant consciously disregarded a substantial risk to Plaintiff's health, and Plaintiff's claim is accordingly subject to dismissal.

## IV.   <u>Leave to Amend</u>

Plaintiff is proceeding *pro se*.  Generally, the Court will afford a *pro se* plaintiff an opportunity to amend prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks omitted). Here, while Plaintiff has already been permitted to file an amended complaint, the Court did not previously require him to amend his remaining claim against Defendant. Accordingly, the Court will grant Plaintiff an opportunity to amend his claim to address the deficiencies identified above.  Plaintiff may file a second amended complaint by no later than <u>September 18, 2021</u>.

- 11 -

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 22) is granted to the extent that Plaintiff's remaining claim is dismissed without prejudice to the filing of a second amended complaint by no later than <u>September 18, 2021</u>.  Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action. *See Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998).  Plaintiff should not include in his second amended complaint any defendants or claims that have previously been dismissed by the Court, nor should he include allegations that are outside the scope of his exhausted grievance; he is granted leave to amend solely with respect to his denial of medical care claim against Dr. Jun as discussed above.  In the event that Plaintiff fails to file a second amended complaint as directed, the action will be dismissed with prejudice.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        August 19, 2021
              Rochester, New York

- 12 -